UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                            )
CARLTON RICHARDSON,         )
      Plaintiff             )
                            )
v.                          )     **Civil No. 05-11004-GAO**
                            )
GERARD HORGAN, ET. AL,      )
      Defendants            )
_____ )

**Response of Defendant Gerard Horgan to Petition for Writ of Habeas Corpus**

Now comes Gerard Horgan, the Superintendent of the Suffolk County House of Correction, who submits the following response to this Court pursuant to Judge O'Toole's Order of May 25, 2005.

On or about May 5, 2005, Carlton Richardson, a current inmate of the Suffolk County House of Correction, filed the instant petition, seeking the Court's intervention in an attempt to be transferred to a "protective custody" housing unit.[1]  Defendant maintains that Mr. Richardson was an inappropriate candidate for the facility's special housing unit because he acknowledges that he does not have any fears about other inmates in the facility.  Instead, Mr. Richardson alleges that he believes he is the victim of a conspiracy of all staff at the House of Correction.  On or about June 13, 2005, Major Paul DeFazio, who is responsible for inmate classification at the House of Correction, met with Mr. Richardson.  They discussed Mr. Richardson's allegations, agreed that it would not be in his best interests to be transferred to the special housing unit, and further agreed that a fresh start in another facility would be best for all concerned due to Mr. Richardson's allegations against the staff at the House of Correction.  Prior

---

[1] The Suffolk County House of Correction does not have a unit entitled "protective custody" but rather refers to such a unit as a "special housing unit."

to Major DeFazio's meeting with Mr. Richardson, Classification Coordinator Joseph Travis met with Mr. Richardson, and Captain John Sullivan met with him on two occasions. A summary of Mr. Travis' and Major Defazio's meeting with Mr. Richardson is attached hereto as Exhibit A, and a summary of Captain Sullivan's interaction with him is attached hereto as Exhibit B.

In short, after Mr. Richardson is evaluated by mental health staff at the House of Correction, he will be transferred to a facility in another county of this Commonwealth, and will no longer interact with the staff he claims have conspired against him.

**Background**

The petitioner, Carlton Richardson, Jr., has been confined at the Suffolk County House of Corrections since January 20, 2005. Richardson has received several disciplinary infractions over the past five months. On several occasions, he has instigated fights with his fellow inmates or has attempted to provoke them into fighting with him. Officers have repeatedly moved Richardson to different cells and, on more than one occasion, Richardson has refused to move voluntarily. Richardson has been found guilty of disruptive behavior, disobeying orders, and insolence to staff. A summary of these infractions is attached hereto as Exhibit C.

Under the Suffolk County Sheriff Department's rules governing special housing, "claims of enemies without names … are insufficient to remove an inmate from his assigned unit." Therefore, pursuant to SCSD policy, the Superintendent denied Richardson's request for special housing on February 23, 2005. Specific information is requested so that the Classification personnel can determine whether placement in the special housing unit is appropriate. The Department must ensure that it does not transfer an inmate to the special housing unit that would pose a threat to the inmates already assigned to that unit.

On March 1, 2005, Captain Sullivan spoke with Richardson regarding his allegations against Lt. McGrane (e.g. that McGrane had misused his position and lied about Richardson). Captain Sullivan asked Richardson if he had any specific knowledge regarding this "very serious complaint," but Richardson's reply was "confused and evasive." According to Captain Sullivan, Richardson kept talking about "large conspiracies" involving all the staff. Later in the conversation, Richardson claimed that Sullivan was now involved in "setting him up" like everyone else.

Richardson made several other complaints when he spoke to Captain Sullivan. He alleged that canteen items had not moved with him when he moved units, so Captain Sullivan provided him with an inmate grievance form to fill out listing all his missing items. Richardson has never filed a grievance form regarding missing canteen items.

Richardson told Captain Sullivan that he feared for his personal safety, and at this point, Captain Sullivan offered Richardson protective custody. Richardson refused. He told Captain Sullivan that he feared the entire staff at the House of Corrections, and not inmates. When asked to be more specific as to whom he feared, Richardson replied, "all you mother fuckers from Southie." See Exhibit B.

On April 29, 2005, Richardson refused to comply with a classification order to move from Unit 142 to Unit 32. He claimed that he feared the security staff that worked in Building 3, and made another request for protective custody. He claimed that he feared retaliation from corrections officers and other inmates against whom he had made previous complaints. He did not name any specific inmate or corrections officer. Once again, Superintendent Horgan asked Captain Sullivan to interview Richardson regarding his allegations.

3

Captain Sullivan interviewed Richardson on the afternoon of April 29, 2005, and asked him why he refused to comply with the classification order. At first, Richardson refused to answer. Then he claimed that "all the officers are trying to set me up." He would not provide any further details.

Mr. Richardson's concerns seem to have been addressed by Major DeFazio on June 13, 2005. Richardson acknowledged to Major DeFazio that a transfer to the special housing unit with sex offenders and inmates needing protection from gang members was not in his best interests. He agreed further that a transfer to a different facility would be in his best interests, as it would remove him from the officers he claims had been conspiring against him.

## Response to Specific Paragraphs of Petition

To the extent that the Court requires a response to the specifically numbered paragraphs of the Mr. Richardson's petition, Superintendent Horgan submits the following:

1. Admitted.

2. Defendant admits that its records indicate that Mr. Richardson is approximately 5 feet 9 inches tall and weighs approximately 130 pounds. Records indicate that his sentence is due to expire in September of 2005.

3. Defendant is without sufficient information to admit or deny the allegations of ¶ 3.

4. Denied.

5. Denied.

6. Defendant denies the allegations of ¶ 6 and states further that Mr. Richardson has failed to identify anyone who has allegedly assaulted him and his medical records do not substantiate allegations of being assaulted.

7. Denied.

8. Defendant is without sufficient information to admit or deny the allegations of ¶ 8.

Respondent request that this Court dismiss the instant petition for habeas corpus. Mr. Richardson asks this Court to compel an assignment to protective custody, yet has admitted to staff that he is not in fear of inmates. He claims instead to fear staff, who he alleges are conspiring against him, and has acknowledged that an assignment to the special housing unit is not in his best interests. Superintendent Horgan has authorized Major DeFazio to transfer Mr. Richardson to another county facility, which should alleviate his concerns about correctional staff at Suffolk County. Supervisory officials at the House of Correction have been very responsive to Mr. Richardson, despite his lack of cooperation. This Court's intervention is not necessary into the decisions concerning the classification of this inmate.

    Respectfully submitted
    Defendant GERARD HORGAN
    By his attorney,


    /s/ James M. Davin_____
    James M. Davin, BBO # 566973
    Suffolk County Sheriff's Department
    200 Nashua Street
    Boston, MA 02114
    (617) 989-6679

Date:    June 13, 2005

To:    Superintendent Gerard Horgan
       Attorney James Davin

From:  Major Paul C. DeFazio

Re:    Carlton Richardson 0500339

Please be advised that Classification Coordinator Joseph Travis met and spoke with inmate Carlton Richardson as he was due to end his disciplinary sanction and be moved to another unit. I/M Richardson was sentenced in January of 2005. I/M Richardson has had numerous disciplinary violations. Since 4/29/05, I/M Richardson has attempted to secure placement in the Special Housing Unit (SHU) citing his need for protection. I/M Richardson has failed to provide any names or specific threats to the Classification Board and has been denied such placement.

On this date, I/M Richardson disclosed to Mr. Travis that he is not having problems "so much with inmates", as he is having problems with Sgt. Dave Dackers and Lieutenant Jason McGrane. Again, Richardson could not provide any specifics, but went on to say that he was seeking outside court intervention, because he thought that the "Superintendent", was not addressing his problems with the officers. Mr. Travis felt that I/M Richardson may be experiencing some clinical issues and referred him to mental health.

On this same date (6/13/05), at approximately 11:00 A.M., I met and spoke with I/M Richardson. Lieutenant Bemis was witness. It was explained the reasons for placement or non-placement of inmates into the Special Housing Unit. I/M Richardson was told that his inability to provide specific threats prevented such placement. I/M Richardson reiterated that he did not have problems with inmates, "Just the inmates that the Officers get on me." I/M Richardson described one incident where he said that an Officer made degrading and hostile comments to him. I/M Richardson did not provide the name of the Officer, but said there were witnesses. I/M Richardson acknowledged that he never named the witnesses before, nor could he name them at this time. I/M Richardson provided no more information.

I/M Richardson agreed that placement in the SHU with sex offenders and inmates needing protection from gang related issues, was not the best place for him. I/M Richardson was attempting to secure housing where he could obtain earned good time and reduce his sentence for an earlier release. I/M Richardson detailed his need for release prior to his current date for educational courses that he has attempted to enroll. I/M Richardson agreed that a transfer to another facility for a fresh start would be in his best interest.

An attempt to secure a transfer will be sought after an assessment from the mental health department on I/M Richardson's is completed.



EXHIBIT A

To: Superintendent Horgan
From: Captain J. Sullivan
Re: Inmate Carton Richardson #0500339
Date: March 1, 2005

Sir, this is a follow-up report on the matter of Inmate Carton Richardson and his numerous complaints.

There seem to be four basic complaints, and I spoke with Inmate Richardson involving each of these.

1) He wished to contact the Justice Department. I referred him to Inmate Legal Services, specifically Jim McDavitt.
2) He complained about canteen items not following him from unit to unit. I provided him with an Inmate Grievance to be filled out listing all his missing items.
3) He states in his complaint that he fears for his personal safety at every turn as long as he remains in the Institution. I offered him protective custody, S.H.U. unit, but he stated it was staff he feared. I asked whom he feared he replied, "all you mother fuckers from Southie".
4) He complains that he was not provided medical care after his escort to Segregation. I was informed by Medical that it is documented in his records that he was seen by Nurse Maryanne Hollis immediately following his escort and he did refuse any treatment or examination. I did offer him a Medical Request slip to be filled out and given to the Nurse during Med. Pass, if he wished to be seen by Medical in the future.

I went on to ask if he any specific knowledge or information regarding the very serious complaint against Lt. Mcgrane using his position to has him harassed. His reply was confused and evasive. He spoke in generalities about large conspiracies involving all staff. He also demanded my name and indicated that he believed I was now involved in "setting him up" like all the others. At this point I felt the matter had been addressed thoroughly.

Respectfully Submitted,

Capt. J. Sullivan
Captain J. Sullivan




# Suffolk County Sheriff's Department

ANDREA J. CABRAL
SHERIFF

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

To: Superintendent Horgan
From: Captain Sullivan
Re: Inmate Carlton Richardson #0500339
Date: April 29th, 2005

Sir, Pursuant to your request to look into the allegations of Inmate Richardson, I have the following to report.

Prior to my interviewing Inmate Richardson, housed in unit 1-4-2, he received a classification move to unit 3-2 earlier this morning, 4-29-05, which he refused to comply with. This resulted in him receiving additional discipline reports, (attached), and being escorted to unit 1-4-1 and placed on "AA-hearing" status. Inmate Richardson did also request protective custody – S.H.U. status.

This afternoon I did interview Inmate Richardson in unit 1-4-1. I asked Inmate Richardson why if he had a fear of Sgt. Dackers in unit 3-4, he refused to move to unit 3-2. Inmate Richardson refused to answer. When I repeated my question, he stated, "All the officers are trying to set me up." I asked him how he came to know this. He would not or could not tell me.

I left him after explaining to him that his request for S.H.U. would be reviewed by Classification.

Respectfully Submitted,

*[signature]*

Captain John K. Sullivan

I C/O [REDACTED] UNASSIGNED ON THE P-3 UNIT ON Wednesday MAY 25, 2005 DO HAVE THE FOLLOWING TO REPORT. AT APPROX. 10:20AM C/O CRENSHAW ENTERED THE UNIT TO DISTRIBUTE CANTEEN. AT THIS TIME MYSELF AND C/O ALESSI STARTED TO SECURE THE UNIT. WHILE SECURING THE UNIT I DID NOTICE I/M CARLTON RICHARDSON #0500339 CELL #5 AND I/M KEON ADAMS #0501406 CELL #13 GO DOWN ON THE FLOOR BY CELL #5. I THEN NOTIFIED OPERATIONS VIA RADIO OF THE ALTERCATION IN UNIT. OFFICER ALESSI AND MYSELF THEN INTERVENED AND SEPERATED THE 2 INMATES. I/M ADAMS COMPLIED WITH OUR DIRECT ORDERS WHILE I/M RICHARDSON ATTEMPTED TO CONTINUE THE ALTERCATION BY TRYING TO GET AT I/M ADAMS. AT THIS TIME I PLACED I/M RICHARDSON IN CELL #5.


EXHIBIT C

SIR, ON Thursday 10-004-2005 AT APPROX 8:19AM WHILE WORKING AS THE BUILDING #01 SUPERVISOR DID ORDER I/M CARLTON RICHARDSON #0500339 131-06 TO ADHERE TO A CLASSIFICATION MOVE TO THE 9TH FLOOR. HE REFUSED THIS ORDER AND WAS MOVED (PER CLASSIFICATION) TO THE 132 UNIT ROOM #08. HIS CONDUCT DID DISRUPT THE ORDERLY RUNNING OF THE UNIT.

SIR, ON Thursday 10-004-2005 AT APPROX 8:19AM WHILE WORKING AS THE BUILDING #01 SUPERVISOR DID ORDER I/M CARLTON RICHARDSON #0500339 131-06 TO ADHERE TO A CLASSIFICATION MOVE TO THE 9TH FLOOR. HE REFUSED THIS ORDER AND WAS MOVED (PER CLASSIFICATION) TO THE 132 UNIT ROOM #08. HIS CONDUCT DID DISRUPT THE ORDERLY RUNNING OF THE UNIT.

The above named inmate was lawfully ordered to move to the unit. The inmate refused the move and was subsequently moved to the 1-4-2 unit without further incident.

A Disciplinary Report was submitted and the incident was referred to the D. Board for further action.

WHILE A[...]04/[...] C[...]SO[...] HIS CLASSIFICATION MOVE. I APPROACHED HIM WHILE HE WAS RESIDING IN UNIT 1-4-2 #8 AND INFORMED HIM THAT HE WAS MOVING. HE THEN STATED THAT HE HAD PROBLEMS WITH OFFICERS AND SUPERVISORS IN BUILDING 3 WHERE HE WAS SUPPOSED TO BE MOVING TO. INMATE RICHARDSON WAS THEN MOVED TO UNIT 1-4-1 ON AWAITING ACTION STATUS. HIS ACTIONS DID DISRUPT THE ORDERLY RUNNING OF THE 1-4-2 UNIT, LT DOWD NOTIFIED

ON 4-23-05 WHILE ASSIGNED TO THE 1-4-2 UNIT 1 OFFICER GENTILE GAVE THE FOLLOWING TO REPORT. AT APPROXIMATELY 4:30 PM I/M RICHARDSON THREW HIS FOOD TRAY APPROX. 10FT. I ASKED I/M RICHARDSON WHAT WAS GOING ON HE SAID "THAT MOTHERFUCKER IS FUCKING WITH MY FOOD" I ASKED WHO. HE RESPONDED " THAT MOTHERFUCKER POINTING FROM HIS CELL AT I/M J. ORTIZ # 0403912. AT NO TIME DID I SEE I/M ORTIZ OR HAKIM WHITE #0404414 TAMPER WITH ANY FOOD DURING THE 1-4-2 UNIT DINNER. LT. C. PAGE NOTIFIED. END OF REPORT.

ON THE ABOVE DATE, INMATE RICHARDSON #W86003 WAS ASSIGNED TO THIS UNIT. INMATE RICHARDSON WAS ASSIGNED TO CELL 62. INMATE RICHARDSON CAME DOWN FROM THE SECOND TIER, APPROACHED ME AND IN A LOUD VOICE SAID "WHY YOU FUCKING WITH ME ALREADY, YOU PUT ME ON THE SECOND TIER AND I WANT A BOTTOOM BUNK." I ASKED HIM FOR A MEDICAL SLIP. HE ANSWERED " YO STOP THE BULLSHIT YOU KNOW I NEED A BOTTOM BUNK I DON'T HAVE A SLIP. INMATE RICHARDSON WAS THEN ORDERED TO HIS CELL, HE REFUSED. SERT 4 WALKER WAS ENTERING THE UNIT, INMATE RICHARDSON TRIED TO EXIT THE UNIT AND WAS STOPPED BY OFFICER WALKER. CAPT. SCOBY RESPONDED AND ORDERED INMATE RICHARDSON TO HIS CELL, AGAIN HE REFUSED. INMATE RICHARDSON WAS HANDCUFFED AND MOVED TO 142-08

ON THE ABOVE DATE INMATE RICHARDSON DID THREATEN HIS CELL MATE JEREMIAH ORTIZ 0403912 INMATE RICHARDSON AND ORTIZ WERE OUT OF THEIR CELL FOR ROOM CLEANING THE TWO INMATES WERE ARGUING BACK AND FORTH INMATE RICHARDSON WALKED TO THE DAYROOM SWEARING WITH HIS HANDS UP TRYING TO PROVOKE INMATE ORTIZ TO FIGHT INMATE RICHARDSON THEN TURNED TO INMATE CLEVELAND BENSON AND TRIED TO GET HIM TO FIGHT SERT WAS CALLED LT JULIUS RESPONDED AND REMOVED INMATE RICHARDSON TO UNIT 142 SEE ATTACHED REPORT

WHILE WORKING THE UNIT I DID ORDER I/M C.RICHARDSON TO SIT IN A CERTAIN SEAT DURING CHOW TIME. I/M RICHARDSON AFTER LISTENING TO MY ORDER IGNORED IT AND PROCEEDED TO ANOTHER TABLE. I/M RICHARDSON WAS ORDERED A SECOND TIME TO SIT IN THIS PARTICULAR SEAT AT WHICH TIME HE STATED IN FRONT OF THE ENTIRE FIRST TIER "I HEARD YOU THE FIRST TIME,WHAT". I LT. MCGRANE THEN LET I/M RICHARDSON FINISH HIS MEAL AND WHEN IT ENDED I ASKED HIM FOR HIS I.D. HE THEN TOLD ME IT WAS IN HIS ROOM, CELL #21. I THEN FOLLOWED I/M RICHARDSON TO HIS CELL TO RETRIEVE HIS I.D. AS I WAS IN THE DOORWAY AND HE WAS IN HIS ROOM , I/M RICHARDSON ONCE AGAIN WAS EXTREMELY HOSTILE IN MANNER. HE STATED TO ME"DO WHAT EVER THE FUCK YOU WANT WITH THAT". I LT. MCGRANE THEN ASKED INMATE RICHARDSON WHAT HIS ISSUE WAS AND HE STATED " ALL YOU MOTHER FUCKERS." I THEN TOLD I/M RICHARDSON TO TURN AROUND TO BE CUFFED AND HE REFUSED THAT ORDER. I/M RICHARDSON WAS THEN PRONED OUT ON THE FLOOR BY MYSELF AND OFICER VARNEY AND REMOVED